Frank J. CISSNE and Isaac B. Cupp, Jr., Appellants,

v.

Richard L. ROBERTSON, C.F. Kendall, II, and G. Ray Miller, Appellees.

No. 05–89–00343–CV.

Court of Appeals of Texas, Dallas.

Dec. 1, 1989.

Rehearing Denied Jan. 16, 1990.

**914**

Douglas W. Brady, Robert E. Yates, Dallas, for appellants.

John R. Stooksberry, McKinney, for appellee Robertson.

Bruce A. Budner, Dallas, for appellee G. Ray Miller.

Stanley B. Binion, Houston, for appellee, C.F. Kendall, II.

Before WHITHAM, ROWE and WHITTINGTON, JJ.

## OPINION

WHITHAM, Justice.

In this suit to recover a real estate commission, appellants, Frank J. Cissne (the salesman) and Isaac B. Cupp, Jr. (the broker), appeal from a judgment in favor of appellees, Richard L. Robertson, C.F. Kendall, II and G. Ray Miller. For the purposes of this opinion, we assume, but do not decide, that the transaction or transactions upon which Cissne and Cupp's claim is based permits the recovery of a commission. The principal issue is whether Cissne

and Cupp, or either of them, may recover the commission sought from Robertson, Miller and Kendall, or any of them. We conclude that neither Cissne nor Cupp is entitled to recover the commission sought from Robertson, Miller and Kendall, or any of them. For the reasons that follow, we find no merit in any of Cissne and Cupp's eleven points of error. Accordingly, we affirm.

Cissne and Cupp brought this action against 3707 Rawlins Partners, a Texas partnership, L. Dean Pinckney, Sr., individually and as a partner of 3707 Rawlins Partners, Richard L. Robertson, individually and as a partner of 3707 Rawlins Partners, C.F. Kendall, II, individually and as a partner of 3707 Rawlins Partners, G. Ray Miller, individually and as a partner of 3707 Rawlins Partners, K & M Enterprises, a Texas partnership, Edward K. Mery, individually and as a partner of K & M Enterprises and 3707 Rawlins Partners, and Jamil Karam, individually and as a partner of K & M Enterprises and 3707 Rawlins Partners. Robertson and Miller filed motions for summary judgment asserting that Cissne and Cupp were not entitled to recover under the Real Estate License Act, TEX. REV.CIV.STAT.ANN. art. 6573a et seq. (Vernon Supp.1989). The trial court granted the motions. Cissne and Cupp filed a motion for summary judgment. The trial court denied that motion. Cissne and Cupp then nonsuited K & M, Mery and Karam and proceeded to trial on the remaining defendants, obtaining post-answer default judgments against 3707 Rawlins Partners, Pinckney and Kendall. Following the granting of a new trial for Kendall, and a bench trial, judgment was rendered that Cissne and Cupp take nothing from Kendall. The trial court entered a final judgment which incorporated the bench trial judgment in favor of Kendall, the summary judgment in favor of Robertson and Miller and the post-answer default judgment against 3707 Rawlins Partners and Pinckney. No appeal has been taken from the judgment in favor of Cissne and Cupp against 3707 Rawlins Partners and Pinck-

ney and this part of the judgment is now final. Cissne and Cupp perfected this appeal from the judgment as to Robertson, Miller and Kendall.

## Background

In essence, we have two records; one from summary judgment proceedings, the second from a bench trial. We hope to avoid confusing the two. We address the summary judgment proceedings first. Miller and Robertson filed motions for summary judgment. Cissne and Cupp filed a motion for summary judgment. A joint hearing was held on all motions and in one order the trial court overruled Cissne and Cupp's motion and granted Miller and Robertson's motions. This much appears undisputed.

Cissne and Cupp bring this suit on a single contract effective October 31, 1984, entitled "Agreement of Sale and Purchase." For the seller, 3707 Rawlins Partners, the agreement was signed by its actual partners, Robertson, Miller, Kendall and Pinckney. Pinckney also signed as managing partner. For the purchaser, K & M Enterprises, the agreement was signed by its actual partners, Mery and Karam. The agreement involved the sale of an office building at 3707 Rawlins Street in Dallas, Texas. Paragraph 5.04 of the agreement recites that sellers would pay a real estate brokerage commission in the aggregate amount of four (4%) percent to be shared equally by Kenneth W. Craig and Cissne, who were referred to in the agreement as "brokers." A commission would be due and payable "only if, as, and when the sale is closed." (Craig is not involved in this action). Cissne was and is not a licensed real estate broker in the State of Texas, but only a real estate salesman. Cupp was Cissne's "sponsoring broker." The agreement does not name or mention Cupp or any entity of Cupp's as a broker to receive a commission. On its face, Cupp and his entities are complete strangers to the agreement. The agreement was not closed by the stated closing date of November 30,

1984, or at any time thereafter. More than three months after the closing date had passed without a closing, Miller was approached for the first time about a different transaction, whereby Miller and Kendall each would convey his entire forty (40%) percent interest in 3707 Rawlins Partners in return for a guaranty by Karam and Mery of the first and second lien notes against the 3707 Rawlins building and for an indemnity. No cash consideration passed whatsoever. The value of the consideration received for the conveyance of Miller's partnership interest was substantially less than the consideration stated in the agreement. Miller conveyed his forty (40%) percent partnership interest to Mery in March 1985, and Kendall conveyed his forty (40%) percent partnership interest to Karam in March 1985.

■ At this point, we point out what is not in the summary judgment record. What is not in the summary judgment record is Cissne and Cupp's insistence that previous drafts of a contract dealing with sale of the property were prepared and that these drafts stated that Cissne was operating on Cupp's behalf. We note that this evidence came out in the Kendall bench trial. What is also not in the summary judgment record is evidence that Kendall conveyed all of his undivided 25% interest in the real estate to Karam on March 14, 1985, and that Miller conveyed all of his undivided 25% interest in the real estate to Mery on March 14, 1985. Therefore, we conclude that this evidence does not constitute summary judgment proof and cannot be used against Robertson and Miller. Indeed, we fail to see how an unsigned draft provides Cupp with a basis for his suit given the final draft which excludes any mention of his name. Nevertheless, Cissne and Cupp maintain that Cupp as Cissne's "sponsoring" broker ought to be entitled to recover a commission from Robertson, Miller and Kendall in some alternate amounts based on what undivided interest in the property ultimately changed hands. We disagree.

## The Robertson and Miller
## Summary Judgment

■ In their sixth point of error, Cissne and Cupp contend that the trial court erred in holding that Cissne, a real estate salesman operating under the brokerage license of Cupp, was not entitled to recover a real estate commission from Robertson, Miller and Kendall. In their seventh point of error, Cissne and Cupp contend that the trial court erred in holding that Cupp, although a licensed broker, was not entitled to recover a real estate commission from Robertson, Miller and Kendall based upon the efforts of his salesman, Cissne. In their ninth point of error, Cissne and Cupp contend that the trial court erred in granting judgment in favor of Robertson, Miller and Kendall, in that Cissne and Cupp substantially complied with the requirements of the Act. In their tenth point of error, Cissne and Cupp contend that the trial court erred in denying their second motion for summary judgment.

The Texas Real Estate License Act provides in pertinent part:

> No real estate salesman shall accept compensation for real estate sales and transactions from any person other than the broker under whom he is at the time licensed or under whom he was licensed when he earned the right to compensation.

TEX.REV.CIV.STAT.ANN. art. 6573a, § 1(d) (Vernon Supp.1989). Cupp, however, is not named in the agreement as a broker entitled to receive a commission nor has he asserted any other basis for entitlement to a commission. On the summary judgment record, Cupp is a stranger to the transaction. Cissne and Cupp did not explain in their brief how Cupp would be entitled to recover a commission when he is not a party to the agreement. Rather, as to the summary judgment, Cissne and Cupp attempt to enter the back door by claiming that Robertson and Miller waived their defense against Cupp by failing to plead the statute of frauds. *See* TEX.REV.CIV.STAT. ANN. art. 6573a, § 20 (Vernon Supp.1989);

TEX.BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). We conclude that this position reflects a fundamental misunderstanding of the legal doctrine of the statute of frauds. The statute of frauds, whether in the Act or in Chapter 26 of the Texas Business & Commerce Code, requires that certain agreements be in writing and signed in order to be enforceable. The primary purpose of the statute of frauds is to prevent fraud and perjury in certain types of transactions by requiring agreements of the parties to be evidenced by a writing signed by them. *Davis v. Crockett*, 398 S.W.2d 302, 305 (Tex.Civ.App.—Dallas 1965, no writ). In the present case, we conclude that the defense of Miller and Robertson is much more fundamental than a statute of frauds defense. Robertson and Miller assert, and the undisputed summary judgment evidence proves, that there was no agreement whether in writing or otherwise, signed or otherwise, under which Cupp could recover his commission. Hence, we conclude that Robertson and Miller are not hiding behind the failure to reduce an agreement to a signed writing. Therefore, we see no need that Robertson and Miller assert the affirmative defense of the statute of frauds. In sum, we conclude that on summary judgment there was no evidence that an agreement for Cupp to receive a commission ever existed.

As to Cissne, he admittedly is a real estate salesman. Texas courts have consistently required a strict compliance with the terms of the Act, where applicable, if a real estate broker or salesman is to use the court for the recovery of fees—denying recovery when the plaintiff has failed to plead and prove proper licensing. *See Henry S. Miller Co. v. Treo Enterprises*, 585 S.W.2d 674, 676 (Tex.1979); *Coastal Plains Development Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 289 (Tex.1978). A plaintiff not licensed as a broker at the time of the transaction, fails to overcome the provisions of section 1(d) of the Act which prohibits the acceptance of a commission by a real estate salesman from anyone other than the broker under whom he is at the

time licensed or under whom he was licensed when he earned the right to compensation. *See Justice v. Willard*, 538 S.W.2d 651, 656 (Tex.Civ.App.—Amarillo 1976, no writ). It follows that the trial court did not err in granting Robertson and Miller's motions for summary judgment and in denying Cissne and Cupp's motion for summary judgment. We overrule Cissne and Cupp's sixth, seventh, and ninth points of error insofar as they complain of trial court error as to Robertson and Miller. We overrule Cissne and Cupp's tenth point of error.

In their fifth point of error, Cissne and Cupp contend that, since Robertson, Miller and Kendall failed to make a plea in abatement complaining of Cissne's asserted lack of standing, the trial court erred in permitting Robertson, Miller and Kendall to contest the standing of Cissne to recover a real estate commission from them. Appellants argue that Robertson, Miller and Kendall were required to file a plea in abatement alleging lack of good standing in order to challenge Cissne's inability to recover under the Act. We disagree. We conclude that Cissne and Cupp misapply the concept of standing. Standing relates to a party's lack of justiciable interest. The concept of standing involves an analysis as to whether a party has a justiciable interest in litigation. *See Texas Industrial Traffic League v. Railroad Commission of Texas*, 633 S.W.2d 821, 823 (Tex.1982). A party's lack of justiciable interest must be pointed out to the trial court in a written plea in abatement and a ruling thereon must be obtained or the matter is waived. *Texas Industrial Traffic League*, 633 S.W.2d at 823. However, we conclude that a justiciable interest exists when a party has been personally aggrieved. On the other hand, standing issues are generally raised when a litigant cannot show personal harm. Cissne has certainly alleged that he was personally and directly aggrieved by Robertson, Miller and Kendall, and he pleaded a specific amount of monetary damages. We con-

clude that Cissne's inability to recover from Robertson, Miller and Kendall has nothing to do with standing but, rather, the provisions of law deny him the right to recover his alleged damages from Robertson, Miller and Kendall. It follows that we find no merit in Cissne and Cupp's fifth point of error. We overrule Cissne and Cupp's fifth point of error.

■ In their eleventh point of error, Cissne and Cupp contend that the trial court erred in granting Robertson and Miller's motions for summary judgment as to all four of Cissne and Cupp's causes of action since the motions only attacked one of the causes of action. Cissne and Cupp's trial pleadings show that Cissne and Cupp set forth four causes of action, namely: breach of contract; fraud; tortious interference with contract; and civil conspiracy. Review of the order granting the motions for summary judgment of Miller and Robertson reflects no mention of the latter three causes of action, but only of the first one, breach of contract. Nevertheless, we conclude that Cissne and Cupp cannot urge causes of action sounding in tort such as fraud, tortious interference with contract and civil conspiracy in order to avoid the requirements of the Act. In *Justice v. Willard,* 538 S.W.2d 651, 654 (Tex.Civ.App. —Amarillo 1976, no writ), the trial pleadings alleged fraud, conversion, breach of fiduciary relationship, and wrongful payment of attorney's fees. Here, as in *Justice,* from a review of the pleadings we conclude that any recovery to which the appellants may be entitled must be based upon a legal right to receive a real estate commission. *Justice,* 538 S.W.2d at 654. Here, as in *Justice,* under any of the theories advanced by appellants, appellants must first convince this Court that: (1) they had a legal right to a real estate commission from Robertson and Miller denied them by Robertson and Miller's fraud; (2) they had a legal right to a real estate commission from Robertson and Miller denied them by Robertson and Miller's tortious interference with the agreement; and

(3) they had a legal right to a real estate commission from Robertson and Miller denied them by Robertson and Miller's conspiracy. *Justice,* 538 S.W.2d at 654. As demonstrated, on their motions for summary judgment, Robertson and Miller negated the legal rights of both Cissne and Cupp to receive a real estate commission from Robertson and Miller. In short, we conclude that Cissne and Cupp may not recover damages for tortious conduct asserted to deprive a party of a legal right he does not possess. Thus, we decline to permit a recovery for fraud, tortious interference with contract and civil conspiracy which recovery in the last analysis would be a recovery for a real estate commission to which Cissne and Cupp are not shown to be entitled. Therefore, we find no trial court error in granting Robertson and Miller's motions for summary judgment as to all four of Cissne and Cupp's causes of action. *See Justice,* 538 S.W.2d at 654. We overrule Cissne and Cupp's eleventh point of error.

### *The Kendall Bench Trial*

In their third point of error, Cissne and Cupp contend that the trial court erred in either refusing to consider the requests for admissions propounded upon Kendall which were deemed admitted by operation of law, or alternatively, finding the same had not been deemed admitted. The undisputed evidence adduced in the bench trial shows that Cissne and Cupp made written demand upon Robertson, Miller and Kendall on September 30, 1985, and filed suit on October 14, 1986. Kendall, even though he had previously filed a voluntary petition in bankruptcy on September 4, 1986, appeared and answered by general denial on January 12, 1987. Kendall's answer contained no mention of the bankruptcy action. Kendall determined not to inform the court or Cissne and Cupp of his pending bankruptcy until June 29, 1987, when he mailed his notice of bankruptcy to the trial court and counsel for Roberts, Miller and Kendall— more than six months after he filed an answer and after service upon him of

Cissne and Cupp's requests for admissions. On November 12, 1987, an agreed order lifting the automatic stay was entered in the bankruptcy court.

■ It is undisputed that on September 4, 1986, Kendall, as debtor, filed a voluntary petition for relief under Chapter 11 of the Federal Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. As a consequence, Cissne and Cupp's claim against Kendall was automatically stayed by the Bankruptcy Code, 11 U.S.C. § 362(a) (1982). In this connection, we point out that no party in the present case, including Kendall, contends that the stay as to Kendall operates as a stay as to any of the other parties-defendant sued by Cissne and Cupp. Notice of the bankruptcy proceedings was filed in the present case on July 2, 1987. Kendall insists, however, that, as to him, the actions taken by Cissne and Cupp in filing the present case and in serving requests for admissions are void. Therefore, the threshold question is whether the filing of Cissne and Cupp's original petition against Kendall on October 14, 1986, and the filing of Cissne and Cupp's first set of requests for admissions to Kendall on June 22, 1987, are void, in the strict sense of that term, or merely voidable. The bankruptcy court lifted the stay on November 12, 1987, by this order:

ORDERED, ADJUDGED AND DECREED

1. That the Order for relief resulting from the filing of the voluntary petition on September 4, 1986, is to be set aside and vacated, and

2. That the voluntary petition filed herein on September 4, 1987, be and the same is hereby DISMISSED.

3. That Ronald J. Blask and Mary Daffin be removed as escrow agents for account No. 817–336.

Regardless of the language of the above order, we answer the threshold question by noting that filing a complaint in an unknowing violation of the automatic stay is voidable, not void. *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir.1989). Therefore, in the present case, we conclude that the filing of Cissne and Cupp's original petition against Kendall on October 14, 1986, and the filing of Cissne and Cupp's first set of requests for admission to Kendall on June 22, 1987, are voidable, not void.

■ Having concluded that these two filings are voidable, and not void, we must determine whether the bankruptcy court intended to validate the filing of Cissne and Cupp's original petition against Kendall on October 14, 1986. *See Sikes*, 881 F.2d at 179. We conclude that it did not. We reach this conclusion because the bankruptcy court's order of November 12, 1987, (1) stands silent as to the present case, and (2) does not "annul" the stay. *Sikes* tells us why "annulling" is important. In section 362(d) (of the Bankruptcy Code) Congress empowered the bankruptcy court to grant relief from the automatic stay "by terminating, annulling, modifying or conditioning" the stay. The power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay. The power to annul authorizes the bankruptcy court to validate actions taken subsequent to the impressing of the 362(a) stay. *Sikes*, 881 F.2d at 178. In so holding, *Sikes* quotes 2 COLLIER'S BANKRUPTCY MANUAL, § 362.06 (3rd ed. 1983) as follows:

In addition to the obvious power to "terminate" the stay, [§ 362(d)] also gives the bankruptcy court the power to "annul" the stay. The difference between the two is that an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay, and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay. On the other hand, an order terminating the stay would be operative only from the date of its entry.

*Sikes*, 881 F.2d at 179. In the present case, we conclude that the bankruptcy

**920**

court's language "set aside and vacated" can be construed as "terminating"; not as "annulling" any stay implicit in or derived from the order for relief resulting from the filing of the voluntary petition on September 4, 1986. It follows, therefore, that the bankruptcy court's November 12, 1987 order has no retroactive operation, but terminates the stay operative only from the date of its entry; November 12, 1987. From this it follows also that Cissne and Cupp's first set of requests for admissions to Kendall on June 22, 1987, are inoperative. The record fails to show that Cissne and Cupp refiled and served these or any other requests for admissions upon Kendall subsequent to November 12, 1987. Consequently, we conclude that the trial court did not err in refusing to consider the requests for admissions propounded upon Kendall or in refusing to deem them admitted. We overrule Cissne and Cupp's third point of error.

■ In their fourth point of error, Cissne and Cupp contend that the trial court erred in permitting Kendall, who failed to file a verified denial complaining of Cissne's alleged lack of capacity, to aver that Cissne was barred from recovering a real estate commission against Kendall. In their brief, Cissne and Cupp tell us that during bench trial as to Kendall, Kendall complained that Cissne, being only a real estate salesman, could not recover a real estate commission from anyone except his broker, Cupp, and, therefore, could not recover such a commission from Kendall, relying upon section 1(d) of the Act. Cissne and Cupp also tell us that this defense was set forth in a trial amendment permitted by leave of Court over Cissne and Cupp's objection that a sworn pleading was required. Cissne and Cupp insist that the matter is controlled by *Pledger v. Schoellkopf,* 762 S.W.2d 145 (Tex.1988). Cissne and Cupp argue that Cissne's "capacity" has been challenged and that a verified plea is required by the Supreme Court's holding in *Pledger.* We disagree with Cissne and Cupp's analysis of Kendall's position. We reason that Kendall does not challenge "capacity" as addressed by TEX.R.CIV.P. 93(1) and (2) and *Pledger.*

Instead, Cissne and Cupp filed this suit in their individual names to recover real estate commissions under the agreement. Kendall affirmatively denied that Cissne and Cupp were entitled to recover such a commission from Kendall because of their failure to comply with the requirements of section 1(d) of the Act. The questions before the court were whether a sale within the agreement had occurred and secondly whether or not the Act barred their recovery. Therefore, we conclude that *Pledger* is inapplicable. In *Pledger,* the Supreme Court held that "[w]hen capacity is contested, Rule 93(2) requires that a verified plea be filed anytime the record does not affirmatively domonstrate [sic] the plaintiff's or defendant's right to bring suit or be sued in *whatever* capacity he is suing." *Pledger,* 762 S.W.2d at 146 (emphasis in original). In the present case, Kendall did not contest Cissne or Cupp's right to bring suit in their individual capacity. He did contest their right to recover the real estate commissions in question for failing to comply with the requirements of the Act. The record in this case clearly demonstrates that Kendall has consistently and repeatedly asserted that Cissne and Cupp are barred from recovery for having failed to comply with the requirements of the Act. Hence, we conclude that the trial court did not err in permitting Kendall—absent a verified denial—to aver that Cissne was barred from recovering a real estate commission against Kendall. We overrule Cissne and Cupp's fourth point of error.

■ In their eighth point of error, Cissne and Cupp contend that the trial court erred in permitting Kendall to make two amendments to his original answer on the day of trial. When first served with citation, Kendall filed a general denial on January 12, 1987. That pleading stood until the date of trial, July 6, 1988, when the trial court, over Cissne and Cupp's objection, granted Kendall leave to file his first amended answer. Such answer was, in accordance with DALLAS CIV.DIST. COURT R. 1.9.a., properly viewed by the trial court as

a trial amendment. This pleading raised a statute of frauds defense for the first time. Following the filing of the amended answer, Kendall announced ready and the trial began. Approximately half-way through the trial, evidence offered by Kendall was objected to by Cissne and Cupp on the basis that Kendall had pled no defenses which would render such evidence relevant. Kendall then sought another trial amendment to include a defense under section 1(d) of the Act. The trial court allowed such trial amendment over Cissne and Cupp's objection. We conclude that Cissne and Cupp's eighth point of error is without merit. The trial court, pursuant to TEX.R. CIV.P. 66, permitted Kendall to file trial amendments during the course of the trial. Rule 66 allows amendment of pleadings when there is no showing of surprise or prejudice to another party in maintaining his cause of action or defense. The granting of leave to file a trial amendment is purely discretionary and the trial court's ruling should not be disturbed on appeal absent a clear showing of abuse of its discretion. *Ohio Medical Products, Inc. v. Suber,* 758 S.W.2d 870 (Tex.App.—Houston [14th Dist.] 1988, no writ). In addition, it should be noted that the trial court stated that it did not believe Cissne and Cupp could be surprised by the subject matter of the trial amendments since those matters had been raised previously in motions for summary judgment and motions for new trial. Therefore, we conclude that Cissne and Cupp have not sustained their burden on appeal of establishing that the trial court abused its discretion in granting the challenged trial amendments. We overrule Cissne and Cupp's eighth point of error.

Next, we address Cissne and Cupp's sixth, seventh and ninth points of error as they might complain of trial court error at Kendall's bench trial. In their sixth point of error, Cissne and Cupp contend that the trial Court erred in holding that Cissne, a real estate salesman, operating under the brokerage license of Cupp, was not entitled to recover a real estate commission from Robertson, Miller and Kendall. In their seventh point of error, Cissne and Cupp contend that the trial court erred in holding that Cupp, although a licensed broker, was not entitled to recover a real estate commission from Robertson, Miller and Kendall based upon the efforts of his salesman, Cissne. In their ninth point of error, Cissne and Cupp contend that the trial court erred in granting judgment in favor of Robertson, Miller and Kendall, in that Cissne and Cupp substantially complied with the requirements of the Act.

■ As to Cissne, he admittedly is a real estate salesman. Texas courts have consistently required a strict compliance with the terms of the Act, where applicable, if a real estate broker or salesman is to use the court for the recovery of fees—denying recovery when the plaintiff has failed to plead and prove proper licensing. *See Henry S. Miller Co. v. Treo Enterprises,* 585 S.W.2d 674, 676 (Tex.1979); *Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 289 (Tex.1978). A plaintiff, not licensed as a broker at the time of the transaction, fails to overcome the provisions of section 1(d) of the Act which prohibits the acceptance of a commission by a real estate salesman from anyone other than the broker under whom he is at the time licensed or under whom he was licensed when he earned the right to compensation. *See Justice v. Willard,* 538 S.W.2d 651, 656 (Tex.Civ.App.—Amarillo 1976, no writ). It follows that the trial court did not err in holding that Cissne was not entitled to recover a real estate commission from Kendall. We overrule Cissne and Cupp's sixth and ninth points of error insofar as they complain of trial court error as to Kendall.

■ As to Cupp, Cissne and Cupp insist that it makes no difference that Cupp was not a signing party to the agreement and was in no manner mentioned or referred to in the agreement. Indeed, Cissne and Cupp argue that Cupp was not a stranger to the agreement. Cissne and Cupp assert that the evidence at the Kendall bench trial

showed that Cissne, when he signed the agreement, was signing the agreement on behalf of Cupp, his sponsoring broker. In this connection, Cissne and Cupp tell us in their brief that "previous drafts of the Agreement had clearly stated that Cissne was operating on Cupp's behalf." For the purposes of this opinion, we assume, but do not decide, that previous drafts of the agreement had stated that Cissne was operating on Cupp's behalf. Nevertheless, we conclude this fact to be of no moment. We reach this conclusion because even though the parties may actually have had something else in mind, they will still be held to be responsible for what they have inserted in their signed agreement. *Estes v. Republic National Bank of Dallas,* 450 S.W.2d 397, 401 (Tex.Civ.App.—Dallas 1969), *aff'd,* 462 S.W.2d 273 (Tex.1970). Hence, we turn to consider what the parties inserted in the signed agreement in the present case. We quote the agreement:

5.04 *Real Estate Commission.* It is understood and agreed that Seller will pay a real estate brokerage commission in the aggregate amount of FOUR PERCENT (4%) of the Total Consideration of EIGHT MILLION ONE HUNDRED THOUSAND DOLLARS ($8,100,000) in connection with the transaction contemplated hereby and that Purchaser will pay no real estate brokerage commission in connection therewith. Said 4% shall be shared equally, 2% to Kenneth W. Craig and 2% to *Frank Cissne* ("*Brokers*"). Such commission shall be due and payable by Seller to the Brokers only if, as, and when this sale is closed.

5.05 Other Real Estate Commissions. Seller and Purchaser each represent and warrant to the other that *no real estate brokerage commission, other than that set forth in Section 5.04 above, is payable to any person or entity in connection with the transaction contemplated hereby,* and each agrees to and does hereby indemnify and hold the other harmless against the payment of any commission to any other person or entity claiming by, through, or under Seller or Purchaser, as applicable.

\* \* \* \* \* \*

7.01 *Entire Agreement.* This Agreement contains the entire agreement of the parties hereto. There are no other agreements, oral or written, between the parties, and this Agreement can be amended only by written agreement signed by the parties hereto, and by reference made apart [sic] hereof.

\* \* \* \* \* \*

7.04 Notice.

\* \* \* \* \* \*

For the purposes of notice, the addresses of the parties shall, until change as provided below, be as follows:

\* \* \* \* \* \*

*Broker:*
KENNETH W. CRAIG (2%)
ATTORNEY AT LAW
P.O. BOX 55817
HOUSTON, TEXAS 77055
FRANK CISSNE (2%)
12900 PRESTON ROAD
SUITE 500
DALLAS, TEXAS 75230

\* \* \* \* \* \*

### JOINDER BY BROKERS

The undersigned *Brokers* join herein to evidence their agreement to the provisions of Section 5.04 and to represent to Seller and Purchaser *that they know of no other brokers,* salespersons or other parties entitled to any compensation for brokerage services arising out of this transaction other than those whose names appear in this Agreement.

Date: 10–30–84

By: Kenneth W. Craig /s/
Kenneth W. Craig

Date: 10/31/84

By: Frank Cissne /s/
Frank Cissne

(emphasis added). We conclude that what the parties inserted in the signed agreement negates the legal effect, if any, of the fact that previous drafts of the agreement had stated that Cissne was operating on

Cupp's behalf. In the agreement, Cissne as "broker" said "that no real estate brokerage commission, other than as set forth in Section 5.04 above is payable to any person or entity in connection with the transaction." Indeed, in the agreement, Cissne as "broker" represented to the seller and purchaser that he "knows of no other brokers ... or other parties entitled to any compensation for brokerage services arising out of this transaction other than those whose names appear in this agreement." It is undisputed that Cupp's name does not appear in the agreement. Hence, we hold Cissne responsible for what he inserted in the agreement. In this connection, we note that Cupp did not testify at the Kendall bench trial. Therefore, any evidence at trial to support Cupp's "no stranger to the agreement" theory of recovery must of necessity come from the mouth of Cissne. We decline to allow Cissne to put a commission denied him as a salesman in Cupp's pocket by testimony contradicting what Cissne inserted in the signed agreement. We conclude, therefore, that the trial court did not err in holding that Cupp was not entitled to recover a real estate commission from Robertson, Miller and Kendall based upon the efforts of his salesman, Cissne. We overrule Cissne and Cupp's seventh and ninth points of error as to Kendall.

### The Default Judgment Against the Partnership

In their second point of error, Cissne and Cupp contend that the trial court erred in refusing to consider the deemed admissions of Pinckney and the partnership when granting judgment for Robertson, Miller and Kendall, due to the fact that they were partners of the partnership and thus bound by these admissions. In their brief, Cissne and Cupp insist that the trial court refused to apply certain asserted deemed admissions against Robertson, Miller and Kendall. Cissne and Cupp fail to point out where in the record may be found the trial court's refusal to consider the asserted deemed admissions against

Robertson, Miller and Kendall. We decline to search the record for the trial court's refusal or refusals. Rule 74(f) provides:

A brief of the argument shall present separately or grouped the points relied upon for reversal. The argument shall include: (1) *a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found;* and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.

TEX.R.APP.P. 74(f) (emphasis added). In interpreting similar language in earlier rules of civil procedure, the courts have been specific as to the duty of the appellate courts to make an independent search of the statement of facts. It is not the duty of the court of appeals to make an independent search of the statement of facts. *Saldana v. Garcia,* 155 Tex. 242, 248, 285 S.W.2d 197, 201 (1955). This Court is not required to search the record for evidence supporting a litigant's position under particular points of error, and in this case we refuse to so search. *See Widmer v. Stamps,* 663 S.W.2d 875, 880 (Tex.App.–Houston [14th Dist.] 1983, no writ), *disapproved on other grounds, McKinley v. Drozd,* 685 S.W.2d 7 (Tex.1985). Because Cissne and Cupp's brief is not referenced to pages in the record concerning the trial court's refusal to consider the asserted deemed admissions, this Court has no duty to independently search the statement of facts in an attempt to determine if the asserted error has merit. *Crisp v. Southwest Bancshares Leasing Co.,* 586 S.W.2d 610, 614 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). The burden is on the litigant to show that the record supports its contentions and to point out the place in the record where matters complained of, or upon which the litigant relies, are shown. *See Vapor Corp. v. Welker,* 582 S.W.2d 858, 860 (Tex.Civ.App.—Beaumont 1979, no writ). "Rule 418(c) [a predecessor to current rule 74] makes plain the duty of counsel to support the points of error with a fair and condensed statement of facts perti-

nent thereto '... *with references to the pages in the record where the same may be found ....*'" *Hale v. Ramsey*, 524 S.W.2d 436, 438 (Tex.Civ.App.—Austin 1975, no writ) (emphasis in original). It is not the obligation of the appellate court to search out the statement of facts to discover the facts which might support a litigant's points of error. *See Hale*, 524 S.W.2d at 438. We conclude, therefore, that in the present case the references to certain errors are not supported by proper references to the record where evidence as to the grounds may be found. *See Kropp v. Prather*, 526 S.W.2d 283, 288 (Tex.Civ. App.—Tyler 1975, writ ref'd n.r.e.). The burden is on the litigant to show that the record supports its contentions and to point out the place in the record where the matters complained of are shown. *See Kropp*, 526 S.W.2d at 288. In the present case, as in *Kropp*, we do not believe that the rules require us to read through the entire record to determine whether Cissne and Cupp's allegations have any validity. *See Kropp*, 526 S.W.2d at 288. We conclude, therefore, that Cissne and Cupp have failed to meet their burden. *See Kropp*, 526 S.W.2d at 288. *See also Most Worshipful Prince Hall v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r. e.). The majority (in *Most Worshipful Prince Hall*) correctly insist that appellee cannot thrust upon us the duty to search the record for evidence to support its position. *Most Worshipful Prince Hall*, 732 S.W.2d at 414 (Hecht, J., concurring). We overrule Cissne and Cupp's second point of error. In doing so, we point out that we are not holding that Cissne and Cupp waived their second point of error by failing to comply with the briefing requirements of rule 74. *See Inpetco, Inc. v. Texas American Bank/Houston*, 729 S.W.2d 300 (Tex.1987). Furthermore, we point out that we are not reversing or affirming a trial court judgment for defects or irregularities in appellate procedure. *See Inpetco*, 729 S.W.2d at 300; TEX. R.APP.P. 83. Therefore, we conclude that the Supreme Court's holding in *Inpetco* is inapplicable in the present case.

Lastly, we consider the effect of the default judgments rendered against Pinckney and the 3707 Rawlins Partners upon the liability of Robertson, Miller and Kendall. As discussed above, service of citation was perfected on the partnership by serving Pinckney, its managing partner. Subsequently, a post-answer default judgment was taken as to the partnership when it failed to appear for trial on February 29, 1988. No appeal was taken from this judgment and it is now final. In their first point of error, Cissne and Cupp contend that the trial court erred in granting judgment in favor of Robertson, Miller and Kendall when judgment was rendered in favor of Cissne and Cupp as to the partnership, in which Robertson, Miller and Kendall were partners at all material times.

Before reaching the merits of Cissne and Cupp's first point of error, we address the effect of the Kendall bankruptcy stay upon Kendall's co-defendants, Robertson, Miller, Pinckney and the 3707 Rawlins Partners. While the general rule is that a stay under section 362(a)(1) of the Bankruptcy Code is not available to nonbankrupt codefendants, in very limited situations a section 362(a)(1) stay may apply to actions against nonbankrupt defendants. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1147 (5th Cir.1987). Such a situation exists when the debtor and nonbankrupt are closely related or "when there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *In re S.I. Acquisition, Inc.*, 817 F.2d at 1147, 1148 (quoting with approval *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 999 [4th Cir.], *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 [1986]). The bankruptcy stay prohibits "any act to obtain possession of property of the estate," which applies as to "all legal or equitable interests of the debtor in property." *See In re S.I. Acquisition, Inc.*, 817 F.2d at 1149. For the purposes of this opinion, we assume, but do not decide, that the Kendall

bankruptcy stay was available to all defendants in the present case. Based on this assumption, properly raised, this stay would have prohibited the maintaining of the entire suit below until the conclusion of the bankruptcy stay. This question, however, was neither raised nor briefed, here or in the court below. All assignments of error not brought forward as points of error are waived. *See* TEX.R.APP.P. 74; *Williams v. Cassel*, 515 S.W.2d 403, 405 (Tex.Civ.App.—Austin 1974, no writ). Therefore, we treat the issue of whether the Kendall bankruptcy stay was available to Kendall's co-defendants Robertson, Miller, Pinckney and 3707 Rawlins Partners to be waived. Thus, we now proceed to the merits of Cissne and Cupp's first point of error.

For the purposes of this opinion, we assume, but do not decide, that at all times material to disposition of the present case, Robertson, Miller and Kendall were partners in 3707 Rawlins Partners. Cissne and Cupp insist that, since the trial court entered judgment against 3707 Rawlins Partners and in favor of Cissne and Cupp, it necessarily follows that the trial court erred in refusing to enter judgment against Robertson, Miller and Kendall as partners. In this connection, Cissne and Cupp point to the Texas Uniform Partnership Act, section 15 which provides that "[a]ll partners are liable jointly and severally for all debts and obligations of the partnership." TEX. REV.CIV.STAT.ANN. art. 6132b, § 15 (Vernon 1970). Hence, Cissne and Cupp argue that since the partnership liability is now unalterably established by default judgment, that of the partners cannot be contested. We disagree.

■ *First, as to Kendall.* We have concluded above in overruling Cissne and Cupp's third point of error that this suit was filed after Kendall filed his petition in bankruptcy. Since Kendall was not reserved after the vacating of the bankruptcy stay, and the stay was not "annulled," the entire suit against Kendall was brought in violation of the bankruptcy stay. Thus,

based upon our above-referenced conclusion, it follows that the trial court did not err in granting judgment in favor of Kendall when judgment was rendered in favor of Cissne and Cupp as to the partnership in which Kendall was a partner. We overrule Cissne and Cupp's first point of error insofar as it complains of trial court error in granting judgment in favor of Kendall.

■ *Second, as to Robertson and Miller.* The motions for summary judgment of appellees, Robertson and Miller, and of appellants, Cissne and Cupp, were heard together on January 29, 1988. The record reflects no response by Cissne and Cupp to Robertson and Miller's motions. On February 24, 1988, the trial court signed the order granting Robertson and Miller's motions and denying Cissne and Cupp's motion. That order provided that Cissne and Cupp take nothing against Robertson and Miller. On February 29, 1988, the case came on for trial. We quote the pertinent parts of what is headed "Final Judgment" and signed February 29, 1988:

APPEARING to the Court that [Cissne and Cupp's] cause of action against Defendants RICHARD L. ROBERTSON, G. RAY MILLER, K & M ENTERPRISES, EDWARD K. MERY, and JAMIL KARAM has been disposed of by way of summary judgment or nonsuit, and that said Defendants are no longer before this Court; and it

FURTHER APPEARING to the Court that Defendants 3707 RAWLINS PARTNERS, L. DEAN PINCKNEY, SR., and C.F. KENDALL, II, although having filed answers in this cause and receiving proper notice of this trial setting, failed to appear for said trial setting either in person or by attorney; and it

FURTHER APPEARING to the Court that, after hearing the evidence and arguments of counsel, [Cissne and Cupp] are entitled to recover of and from Defendants 3707 RAWLINS PARTNERS, L. DEAN PINCKNEY, SR., and C.F. KENDALL, II, the damages sought in their First Amended Petition; it is

THEREFORE ORDERED, ADJUDGED and DECREED that [Cissne and Cupp] have and recover of and from Defendants 3707 RAWLINS PARTNERS, L. DEAN PINCKNEY, SR., and C.F. KENDALL, II, both jointly and severally, the sum of $162,000.00, together with pre-judgment interest on said sum at the rate of 6% per annum in the total amount of $28,760.54, and post-judgment interest at the rate of 10% per annum from the date hereof until paid; ....

Thus, as of February 29, 1988, the trial court reaffirmed a take-nothing summary judgment in favor of Robertson and Miller and recognized that they were "no longer before this court" at the time that default judgment was entered against 3707 Rawlins Partners. At no time after the summary judgment in their favor on February 24, 1988, did Cissne and Cupp, or the trial court, advise Robertson and Miller that they were again "before the court" for purposes of further defending themselves on any claim asserted against them by Cissne and Cupp, including any claim that Robertson and Miller were liable in their capacity as partners in 3707 Rawlins Partners. Hence, at the time that post-answer default judgment was entered against 3707 Rawlins Partners, Robertson and Miller were not before the court and had a take-nothing judgment in their favor.

Moreover, subsequent events changed nothing. On May 16, 1988, the trial court granted Kendall a new trial. Kendall's bench trial was held July 8, 1988, and a take-nothing judgment in Kendall's favor was entered October 31, 1988. We quote the pertinent parts of what is headed "Final Judgment" signed that date:

APPEARING to the Court that an interlocutory default judgment has previously been entered against Defendants 3707 RAWLINS PARTNERS and L. DEAN PINCKNEY, SR., and that said Judgment should be made final by the entry of this Final Judgment; and it

FURTHER APPEARING to the Court that [Cissne and Cupp's] cause of action against Defendants RICHARD L. ROBERTSON, G. RAY MILLER, K & M ENTERPRISES, EDWARD K. MERY, and JAMIL KARAM has been disposed of by way of summary judgment or non-suit, and that said rulings should be made final by the entry of this Final Judgment; and it

FURTHER APPEARING to the Court that, after hearing the evidence presented by the parties and the argument of counsel, [Cissne and Cupp] should take nothing by reason of this suit against Defendant C.F. KENDALL, II; it is

THEREFORE ORDERED, ADJUDGED and DECREED that [Cissne and Cupp] take nothing by reason of this suit against the Defendant C.F. Kendall, II; and it is

FURTHER ORDERED, ADJUDGED and DECREED that [Cissne and Cupp] have and recover from Defendants 3707 RAWLINS PARTNERS and L. DEAN PINCKNEY, SR., jointly and severally, the sum of $162,000.00, together with pre-judgment interest on said sum at the rate of six (6%) percent per annum in the total amount of $32,861.59, and post judgment interest at the rate of ten (10%) percent per annum from the date hereof until paid; and it is

FURTHER ORDERED, ADJUDGED and DECREED that the above-described rulings with regard to Defendants 3707 RAWLINS PARTNERS, L. DEAN PINCKNEY, SR., RICHARD L. ROBERTSON, G. RAY MILLER, K & M ENTERPRISES, EDWARD K. MERY and JAMIL KARAM be and are hereby made final in all respects; ....

Thereafter, on November 28, 1988, the trial court entered what is headed "Amended Final Judgment." We quote the pertinent parts of the "Amended Final Judgment" signed that date:

APPEARING to the Court that an interlocutory default judgment has previously been entered against Defendants 3707 RAWLINS PARTNERS and L. DEAN PINCKNEY, SR., and that said Judg-

ment should be made final by the entry of this Final Judgment; and it

FURTHER APPEARING to the Court that [Cissne and Cupp's] cause of action against Defendants RICHARD L. ROBERTSON and G. RAY MILLER has been disposed of by way of summary judgment, and that [Cissne and Cupp's] cause of action against Defendants K & M ENTERPRISES, EDWARD K. MERY, and JAMIL KARAM has been disposed of by way of nonsuit, and that said rulings should be made final by the entry of this Final Judgment; and it

FURTHER APPEARING to the Court that, after hearing the evidence presented by the parties and the argument of counsel, [Cissne and Cupp] should take nothing by reason of ·this suit against Defendant C.F. KENDALL, II; and it

FURTHER APPEARING to the Court that a Final Judgment was entered by this court on October 31, 1988, but that that Judgment should be withdrawn and this Amended Final Judgment entered in its place; it is

THEREFORE ORDERED, ADJUDGED and DECREED that the Final Judgment entered by this Court on October 31, 1988, be and is hereby withdrawn in its entirety and this Amended Final Judgment be and is hereby entered in its place; and it is

FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs FRANK J. CISSNE and ISAAC B. CUPP, JR., take nothing by reason of this suit against the Defendant C.F. KENDALL, II; and it is

FURTHER ORDERED, ADJUDGED and DECREED that the above-described rulings with regard to Defendants 3707 RAWLINS PARTNERS, L. DEAN PINCKNEY, SR., RICHARD L. ROBERTSON, G. RAY MILLER, K. & M. ENTERPRISES, EDWARD K. ˙MERY and JAMIL KARAM be and are hereby made final in all respects;....

█ On the record, we conclude that Cissne and Cupp seek to impose what

amounts to derivative partner liability upon partners who were not before the court at the time the post-answer default judgment was entered against the partnership, indeed partners who had appeared and answered at the proper time and who had obtained a take-nothing judgment in their favor and against Cissne and Cupp. Therefore, in the present case, a partnership was sued and judgment taken against the partnership and not against the individual partners who were not before the court and who had not been brought back before the court following the interlocutory summary judgment in their favor. Where a partnership is sued and judgment is taken against the partnership as such and not against the individual partners, no judgment against the individual is presumed. *Mallory v. Russell,* 242 S.W. 1112, 1113 (Tex.Civ.App. —Fort Worth 1922, writ dism'd w.o.j.). We conclude, therefore, that the trial court did not err in granting judgment in favor of Robertson and Miller when judgment was rendered in favor of Cissne and Cupp as to the partnership in which Robertson and Miller were partners. We overrule Cissne and Cupp's first point of error insofar as it complains of trial court error in granting judgment in favor of Robertson and Miller.

Having overruled all of Cissne and Cupp's points of error, we affirm the trial court's judgment.